Dunn and McCarthy, Inc. v. Commissioner.
Dunn & McCarthy, Inc. v. Commissioner
Docket No. 109554.
United States Tax Court
1943 Tax Ct. Memo LEXIS 398; 1 T.C.M. (CCH) 789; T.C.M. (RIA) 43135; March 19, 1943
*398 Payment by petitioner of personal debts due to employees of petitioner by deceased president held not to be an ordinary and necessary expense. David A. Embury, Esq., 63 Wall St., New York City, for the petitioner. Francis S. Gettle, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for the year 1939 in the amount of $4,218.53, $3,899.55 of which sum is in controversy. The issue raised is whether petitioner should be allowed a deduction of $20,523.92 as an ordinary and necessary business expense. Findings of Fact The petitioner is a New York corporation located in Auburn, New York, and is engaged in the manufacture and sale to retail stores of women's shoes, under the trade name Enna Jettick. Its income tax return for 1939 was filed with the Collector for the 21st district at Syracuse, New York. Buford H. Jones, until the time of his death on December 6, 1939, had been the president of petitioner corporation. He had held this position for two and onehalf years and for some time prior to that he had been vice president and general sales manager. In addition to his salary as president Jones received *399 compensation under an employment contract based on a percentage of net earnings, the settlement thereof for each year being made after the close of petitioner's books for the year. Of his total compensation for the year 1939, amounting to $61,267.19, an amount representing the bonus under his employment contract remained unpaid at the time of his death and was paid to his estate after his death. Jones had engaged in race track gambling, and as a result suffered heavy losses. He committed suicide on December 6, 1939, at which time his personal indebtedness amounted to $336,000. Part of this was secured by collateral, a sale of which brought $126,000, leaving a net unsecured indebtedness of approximately $210,000. The unpledged assets of the estate realized enough to pay only seven or eight per cent of the unsecured indebtedness. Included in the unsecured indebtedness of Jones was the amount of $20,523.92, which represented borrowings from seven of petitioner's top ranking salesmen who worked directly under Jones. These debts were incurred at a time when Jones was either president of petitioner corporation or when he previously occupied the position of vice president and sales manager. *400 The loans were evidenced by demand promissory notes held by five of the salesmen and cancelled checks of the other two. On December 27, 1939, the Board of Directors adopted a formal resolution which authorized the new president on behalf of the corporation to repay the loans made by the salesmen to Jones and accept assignment of claims in return. The resolution reads as follows: The President requested that the minutes of this meeting record the informal action of the directors in authorizing the President, for the Corporation, to repay the loans made by the Corporation's salesmen to Buford H. Jones and to take up the notes (or other evidences of indebtedness) amounting to $20,523.92 for the account of the Corporation, and Upon Motion duly made, seconded and unanimously carried, the above described action was formally approved. %on december 21, 1939, petitioner paid to the salesmen the amount of their respective loans made to Jones plus interest, taking assignments of their claims against the Jones estate in return. The total amount of these payments was charged on petitioner's books to profit and loss and credited to general ledger control account, the journal entry explanation *401 being "Loans made by Dunn and McCarthy salesmen to Buford H. Jones and taken over by the corporation as per slip attached." The seven salesmen from whom Jones had borrowed these varying sums were those with the largest incomes and they were among the ten best salesmen employed by petitioner. The action of the Board of Directors was based on the recommendation of the new president that the loans be repaid to protect the good will of the business. There was no indication that if the loans were not paid petitioner would lose either customers or its salesmen. There was no difference in the attitude of the salesmen, nor in the conduct of their sales between December 7 and the date of the repayment of the loans by petitioner on December 21. While the loans to Jones by the salesmen were recognized by all concerned as of a purely personal nature, the fact that Jones was the official superior of these salesmen when he requested these loans of them was considered by petitioner when it decided to repay the same. This action by petitioner was regarded as beneficial to it. There was a balance due on Jones' compensation at the time of his death, but petitioner could not repay the loans and use *402 this balance as an offset as they would, by so doing, become preferred creditors. The corporation filed with the executors of Jones' estate claims for the amounts paid by it to the salesmen. On such claims it received in 1940, $1,476.06, and in 1941, $64.35, and these sums were returned as income by petitioner in the respective years received. Opinion ARUNDELL, Judge: We agree with the Commissioner that the payment by petitioner of Jones' private debts to the seven employees of petitioner may not be characterized as an ordinary and necessary expense of carrying on petitioner's trade or business. While we do not question the judgment of petitioner's directors in thinking that their action was an appropriate and helpful course to follow and to that extent what was done might be regarded as necessary, it is much more difficult to reach the conclusion that the payment of the debts of another even in the circumstances here present was an ordinary expense of carrying on a business. "Ordinary has the connotation of normal, usual, or customary. To be sure, an expense may be ordinary though it happen but once in the taxpayer's lifetime. Cf. . *403 Yet the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved." . "Men do at times pay the debts of others without legal obligation or the lighter obligation imposed by the usages of trade or by neighborly amenities, but they do not do so ordinarily, not even though the result might be to heighten their reputation for generosity and opulence. Indeed, if language is to be read in its natural and common meaning * * * we should have to say that payment in such circumstances, instead of being ordinary is in a high degree extraordinary. There is nothing ordinary in the stimulus evoking it, and none in the response." . We think what the Supreme Court has stated in the quotations just given so clearly reaches the instant problem and is so directly in point, that a discussion of the numerous holdings of this tribunal and other courts upon this ever recurring problem of what constitutes an ordinary and necessary expense would not be helpful. The argument of petitioner's counsel that these payments were to "preserve" *404 petitioner's good will as distinct from "acquiring" good will, in our opinion, has too little factual background to warrant extended discussion. Decision will be entered for the respondent.